# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| JULIUS HARRELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SERGEANT HARRIS, CO II )<br>BADE, DEPUTY WARDEN )<br>SINKFORD, DR. WEILEMAN, )<br>DR. MOORMAN, DR. AWE, and )<br>GEORGIA DEPARTMENT OF )<br>CORRECTIONS, )<br>)<br>Defendants. ) | Case No. CV413-096 |

## REPORT AND RECOMMENDATION

Julius Harrell, a prisoner confined at Coastal State Prison, has filed a complaint pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement. As he is proceeding *in forma pauperis*, the Court must screen his complaint to determine whether it states a claim for relief. 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Even giving plaintiff's complaint a liberal construction, *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006), it fails to allege sufficient facts to set

forth an Eighth Amendment claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff alleges that while he was being transported in a van from Jackson State Prison to Coastal State Prison on December 29, 2011, the van flipped over after its driver, defendant Harris, fell asleep at the wheel. Doc. 1 at 10. He contends that prior to the accident he kept chastising Harris for his obvious drowsiness, but that neither Harris nor defendant Bade, another correctional officer in the van, paid him any attention. *Id.*

Following the accident, plaintiff was taken to the Medical Center of Central Georgia, where he was given a neck brace and some Motrin. *Id.* at 11. He was evidently placed back on a prison transport, but before he arrived at Coastal State Prison, defendant Bade allegedly confiscated his neck brace and refused to give it back. *Id.* Plaintiff further contends that although he had a 13-day prescription for Motrin, he only received this medication "for approximately six (6) days." *Id.* He submitted a Health Request form for Motrin on January 7, 2012 (nine days after the accident), but the request was denied on January 10 by "J. Moore" (who is not a named defendant). *Id.* The next day, he mentioned his request for

2

medical care to Deputy Warden Sinkford, who indicated that someone would come to speak with him about the matter. *Id.* at 12. On January 18, he informed the prison psychologist, Dr. Weileman, that he was "seeing the van wreck in his sleep." *Id.*

On January 26, 2012, plaintiff saw Dr. Awe, who prescribed muscle relaxers for his sore neck. On February 16, he informed Dr. Moorman that he was still having "some problem" when he turned his neck. Dr. Moorman simply said that his "muscle was [too] soft." *Id.* at 13.

Plaintiff sues defendants Harris and Bade for endangering his life by failing to stay awake while operating the prison van. He asserts that this conduct constituted "deliberate indifference and attempt[ed] murder" in violation of the United States and Georgia Constitutions. *Id.* at 14. He claims that defendant Bade also acted with deliberate indifference to his medical needs by confiscating his neck brace. He sues Deputy Warden Sinkford for violating his federal and state constitutional rights by failing to ensure that he received proper medical care. *Id.* at 15. He claims that defendant Weileman violated the Georgia constitution and state law when she indicated that there was "nothing she could do" about the medical

department's failure to provide him with additional treatment, and for ignoring his report of vivid dreams about the accident. He makes no reference to either Dr. Moorman or Dr. Awe in the "causes of action" section of his complaint. *Id.* at 14-15. Nor does he endeavor to state any cause of action against the Georgia Department of Corrections.

Harrell cannot obtain relief under § 1983 against correctional officers Harris and Bade for their alleged negligence in causing an automobile accident while transporting him in the prison van. The Eighth Amendment protects prisoners from "cruel and unusual punishments," but it requires conduct by a prison official that is "more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (a prison official's negligence in failing to protect an inmate from harm does not give rise to a cause of action under § 1983). Negligence law permits recovery against a defendant whose conduct, viewed objectively, failed to protect plaintiff from a recognizable risk of harm that the defendant *should have* appreciated, even if he did not. *Farmer*, 511 U.S. at 838. Negligence law does not require that the defendant have any particular state of mind.

William L. Prosser, Law of Torts §§ 31-32 (4th ed. 1971) (negligence law demands that an actor conform his conduct to an "external objective standard," § 32, and imposes no state-of-mind requirement, § 31). But because "only inflictions of punishment" are prohibited by the Eighth Amendment, *Farmer*, 511 U.S. at 841, a prison official faces liability under § 1983 only where he has the requisite mental state of "deliberate indifference," which the Supreme Court has defined in terms of the "subjective recklessness" standard used in the criminal law: the official must be actually aware of the risk to which the inmate is exposed and he must consciously disregard that risk. *Farmer*, 511 U.S. at 837-40.

It is true that Harrell has alleged more than ordinary negligence here, for he claims that after he noticed defendant Harris falling asleep at the wheel, he alerted both correctional officers of his concerns. Harrell has thus stated a plausible claim of "gross negligence" or civil-law recklessness. These aggravated forms of negligence -- which permit recovery where a prison official fails to protect an inmate from "an unjustifiably high risk of harm that is either known or is so obvious that it should be known" -- are subject to the same *objective* reasonable-man

5

standard as ordinary negligence. *Farmer*, 511 U.S. at 836; Prosser, § 34. Harrell has advanced no facts to suggest that defendants intended any form of punishment, or that they knew he would be harmed and consciously disregarded the risk. Obviously, Officers Harris and Bade were occupants of the van they were operating and therefore were exposed to the same danger as the prisoners they were transporting. There is no allegation that those defendants consciously desired to harm themselves or were criminally reckless as to *their own safety*. Harrell's allegations, therefore, do not meet the demanding standard of criminal law recklessness -- that defendants not only were "aware of facts from which the inference *could be drawn* that a substantial risk of serious harm exist[ed]," but that they also subjectively "dr[ew] the inference." *Farmer*, 511 U.S. at 837 (emphasis added). Harrell alleges that these officers fell below the objective standard of conduct required of a reasonable man while operating a vehicle. That is a classic common-law tort claim, but it falls short of the deliberate-indifference standard required to recover for "cruel and unusual punishments" under the Eighth Amendment.

Harrell next seeks to recover against Correctional Officer Bade, Deputy Warden Sinkford, and Dr. Weileman for an alleged deprivation of necessary medical care.[1] To state a constitutional claim based upon a failure to provide adequate medical care, a prisoner must establish that a prison official exhibited "deliberate indifference" to his "serious medical needs," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and show that the defendant's conduct caused the harm of which he complains. *Goebert v. Lee County*, 570 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious where the denial of treatment would result in the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 103.

While Harrell was taken to an emergency room following the accident, he has not alleged any particular diagnosis by a physician. Nor has he suggested that he had any serious injury or was ever in severe pain. After receiving some Motrin and a neck brace, he was released and placed back on a non-medical transport to the Coastal State Prison in Savannah. Plaintiff alleges that during this transport defendant Bade confiscated the neck brace that he had received during his visit to the emergency room.

---

[1] Again, while Harrell also names Dr. Moorman, Dr. Awe, and the Georgia Department of Corrections as defendants, he never states a cause of action against any of these defendants. Doc. 1 at 14-15.

The law provides, of course, that a correctional officer may be liable for interfering with prescribed medical treatment. *Estelle*, 429 U.S. at 104-05. But Harrell never alleges that the emergency room personnel told him that a neck brace was essential for his care. Nor does he assert that the deprivation of the brace increased his pain, hampered his recovery, or caused him any permanent damage. Indeed, there is no allegation that he ever sought the return of the neck brace once he arrived at Coastal State Prison. Harrell, therefore, has stated no facts suggesting that defendant Bade's actions posed an unreasonable risk of serious damage to his future health. Motorists involved in traffic accidents frequently sustain minor soft tissue injuries that cause immediate discomfort but that, given time, heal of their own accord. Such injuries, like a sprained ankle or a pulled muscle, are commonplace occurrences that often fail to pose a serious health problem worthy of constitutional significance. *See, e.g., Dotson v. Corr'l Med. Serv.*, 584 F. Supp. 2d 1063, 1068 (W.D. Tenn. 2008) (ankle sprain did not rise to the level of a serious medical need) (citing numerous cases), *aff'd on other grounds*, 385 F. App'x 468 (6th Cir. 2010). While Harrell may have sustained some minor injury, he never sets forth an

objectively serious medical need, which is an essential element of an Eighth Amendment claim.

His claim against Dr. Weileman, the prison psychologist, also fails. He alleges that he told her "about seeing the van wreck in his sleep," doc. 1 at 12, 15, but he never alleges either that he suffered from any serious psychological disorder or that she misdiagnosed or mistreated him in any way. He further claims that after he told her about "his not being able to get the Medical Department" to take some unspecified action, she stated that there was nothing "she could do about that." *Id.* at 15. He has not alleged that her statement was untrue, much less that she was subjectively aware that the medical department was actually denying him proper medical care. Harrell has stated no plausible § 1983 claim against this defendant.

Finally, Harrell has not set forth any facts establishing that Deputy Warden Sinkford violated his Eighth Amendment right to humane conditions of confinement. Harrell states only that he spoke with Sinkford regarding his request for additional care and that Sinkford informed him that "someone" would come speak to him. He never alleges

that Sinkford failed to honor that promise or that Sinkford knew for a fact that the medical staff was failing to provide proper treatment. Even assuming that he had a serious medical need, Harrell has not made out a claim of deliberate indifference by this official.

As Harrell has failed to state a claim for relief under § 1983 against any of the named defendants, his complaint should be **DISMISSED**.

**SO REPORTED AND RECOMMENDED** this 28th day of August, 2014.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA